IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JASON R. HARLOW, and <br> AMANDA J. ECKLES, <br>     Plaintiffs, <br> v. <br> AMY M. HUMPHREY, PRINCETON MANAGEMENT D/B/A LANCASTER HEIGHTS OWNER, LLC, PRINCETON MANAGEMENT, LLC, DEBORAH MCGRAW, and PRINCETON ACQUISITION, LLC, <br>     Defendants. | Case No. 1:21-cv-1214 |

## DEFENDANTS' NOTICE OF REMOVAL

Defendants Lancaster Heights Owner, LLC ("Lancaster Heights"), Princeton Management, LLC ("Princeton"), Princeton Acquisition, LLC ("Princeton Acquisition"), and Amy M. Humphrey ("Humphrey") (collectively "Defendants"), by and through their undersigned counsel, pursuant to 28 U.S.C. §§ 1331, 1367, 1441 and 1446, submit this Notice of Removal of this action from the Circuit Court of McClean County, Illinois to the United States District Court for the Central District of Illinois, Peoria Division. The grounds for this removal are:

1. Plaintiffs Jason Harlow ("Harlow") and Amanda Eckles ("Eckles") (collectively "Plaintiffs"), filed their initial Complaint against Defendants in the Circuit Court of McClean County, Illinois, captioned *Jason R. Harlow and Amanda J. Eckles v. Amy M. Humphrey, Lancaster Heights Owner, LLC, and Princeton Management, LLC*, Case No. 2021 L 0000041 (the "State Court Action"). In their initial Complaint, Plaintiffs alleged, *inter alia*, false imprisonment (Counts 1-31), civil conspiracy (Count 32), negligent hiring, retention, and supervision (Count 33), and intentional infliction of emotional distress ("IIED") (Count 34) relating to their former

1

employment with Lancaster and the day-to-day interactions with their former supervisor Humphrey. Plaintiffs characterized their initial Complaint as one seeking relief pursuant to the common law of the State of Illinois.

2. The Summons in the State Court Action were served on Defendants on or about April 13, 2021. A copy of the Summons and Complaint are attached as Exhibit A.

3. On May 13, 2021, Defendants filed a Motion to Dismiss Plaintiffs' Complaint in its entirety. A copy of Defendants' Motion to Dismiss is attached as Exhibit B.

4. On May 19, 2021, Plaintiffs filed a First Amended Complaint adding Deborah McGraw ("McGraw") as a defendant. A copy of Plaintiffs' First Amended Complaint is attached as Exhibit C.

5. On May 27, 2021, the Circuit Court struck Plaintiffs' First Amended Complaint for Plaintiffs' failure to obtain leave prior to its filing, provided Plaintiffs with leave to file a Second Amended Complaint, and dismissed Defendants' Motion to Dismiss as moot due to the anticipated amendment of the Complaint. The Docket Sheet for the Circuit Court Action is attached as Exhibit D.

6. On July 9, 2021, Plaintiffs' filed a Second Amended Complaint ("SAC"). A copy of Plaintiffs' Second Amended Complaint and Attached Exhibits are attached as Exhibit E.

7. Plaintiffs' SAC also added as defendants McGraw, a resident of Michigan who has not yet been served with summons or appeared in any proceedings, and Princeton Acquisition, LLC. *Id.* Plaintiff's served summons on Princeton Acquisition, LLC on July 26, 2021. A copy of the Summons to Princeton Acquisition, LLC is attached as Exhibit G.

8. Plaintiffs' SAC included the same counts contained in the initial Complaint and added the following new counts: negligence for violating, among other things, the Families First

Coronavirus Response Act ("FFCRA"), the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Occupational Health and Safety Act ("OSHA") (Count I); breach of contract relating to Defendants' purported violations of their sexual harassment and safety policies (Count 36), defamation (Count 37), battery (Count 38); and civil violation of the Illinois Hate Crime Act. *See* Exhibit E.

9. The alleged violations of federal law were not included in Plaintiffs' initial Complaint or First Amended Complaint. *See* Exhibits A & C.

10. Additionally, for the first time, Plaintiffs' attached as Exhibits to the SAC copies of a Right to Sue Letter from the EEOC and OSHA complaint correspondence. *See* Ex. E (Pl. Exs. J, K).

11. For the reasons set forth below and pursuant to 28 U.S.C. § 1446(b)(3), the basis for removal was not apparent until Plaintiffs filed their SAC and, as such, Defendants' thirty-day period for removal was triggered by the filing of the SAC and the deadline to remove this matter has not yet expired. Accordingly, Defendants' Notice of Removal is timely.

12. In addition to the SAC, Plaintiffs have filed an affidavit from Harlow's husband in the Circuit Court. Plaintiffs have not served upon Defendants any other process, pleadings, or orders. The Affidavit of Kevin Valera and Certificate of Service regarding same is attached as Exhibit F.

13. Other than filing the Motion to Dismiss and appearing for its presentment, Defendants have not taken any action in the State Court Action.

14. All Defendants that have been properly joined and served have joined in and consent to the removal of this action as required by 28 U.S.C. § 1446(b)(2)(A).

30459874
FP 41158988.1

**Plaintiffs' Second Amended Complaint Arises Under Federal Law**

15. A case originally filed in state court may be removed to federal court pursuant to 28 U.S.C. §1441 if the claim is one arising under federal law. S*ee Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) ("one category or cases of which district courts have original jurisdiction are 'federal question' cases"). To determine whether a claim arises under federal law, the court examines the well pleaded allegations of the complaint. *Id.* The well-pleaded complaint rule controls whether federal jurisdiction exists over an action and provides for federal jurisdiction when a federal question is presented on the face of the plaintiff's properly plead complaint. *See Kenro, Inc. v. Fax Daily, Inc.*, 904 F. Supp. 912, 913 (S.D. Ind. 1995). For federal question jurisdiction to exist over an action, federal law must create the cause of action, or some substantial, disputed question of federal law must be an element of the plaintiff's claim. *Id.* This is true whether or not the complaint expressly states that the right sought to be enforced is a federal one. *Burda v. M. Ecker Co.*, 954 F.2d 434, 438 (7th Cir. Ill. 1992) (even when no federal claim appears on the face of the complaint, removal is still appropriate if plaintiff artfully pled the complaint).

16. In this case, Plaintiffs' SAC presents substantial questions of federal law and contains federal causes of action, thereby justifying removal. Specifically, Plaintiffs allege that they were subjected to violations of the FFCRA, the ADA, Title VII, and the OSHA.

17. It does not matter that Plaintiffs did not characterize any of their count headings as seeking relief under federal law. *See, e.g., Bastien v. AT&T Wireless Servs.*, 205 F.3d 983, 987 (7th Cir. 2000) ("We will not be bound by the names and labels placed on a complaint by the plaintiff when that complaint in fact raises a federal question.").

18. In *McElroy v. SOS Int'l, Inc.*, Northern District Judge James Holderman upheld the removal of a complaint alleging an Illinois common law retaliatory discharge in retaliation for

having made an internal OSHA complaint. 730 F.Supp. 803, 806 (N.D. Ill. 1989). The court held that even though plaintiff only sought relief under state law theories of recovery and identified state statutes, the complaint "raise[d] a federal question" and "was properly removed to" federal court. *Id.* In so holding, the court determined that plaintiff's references to OSHA in his complaint was enough evidence to establish the plaintiff was seeking relief pursuant to 28 U.S.C. § 1441(a). *Id.* at 805. Moreover, the court reasoned that even if the plaintiff "amended his complaint to camouflage any mention of OSHA, the 'artful pleading' exception to the well-pleaded complaint rule would require that [the] court look beyond the face of the complaint to expose any federal claim." *Id.* at 806. *See also Oglesby v. RCA Corp.*, 752 F.2d 272, 276 n.2 (7th Cir. 1985) (if plaintiff's cause of action were construed as one for retaliatory discharge for exercising his rights under OSHA "it would have been grounded squarely on federal law and therefore removable by defendant as a matter of right.").

19. *Chicago v. Int'l College of Surgeons* is also instructive. 522 U.S. 156 (1997). In *Int'l College of Surgeons*, the Supreme Court held that the removal of a state action, which sought the administrative review of a state agency's decision, was proper. *Id.* Although the plaintiff sought relief pursuant to the Illinois Administrative Review Act, the plaintiff raised and relied upon federal Constitutional violations to establish the impropriety of the agency's action. *Id.* at 164. Because of the plaintiff's reliance on constitutional violations, the Supreme Court found that removal was proper. *Id.* The Court held that plaintiff had injected federal constitutional issues into the state law claim. *Id.*

20. Like *McElroy* and *Int'l College of Surgeons*, in this case, a substantial portion of Plaintiffs' SAC is devoted to discussion of alleged violations federal laws and regulations. Indeed, at least twenty-two of Plaintiffs' allegations contained in the newly added counts to the SAC

reference alleged violations of federal law. *See* SAC, Ex. E Count 1 ¶¶ 1-7, 12, 14, 16, 61, 64, 67, 74, 76, 106, 122, Count 35, ¶¶ 9-10, 25, Count 38, ¶¶ 11, 12.

21. For example, Plaintiffs claim the following alleged violations of federal law:

**Alleged FFCRA Allegations**

- That on or about March 18, 2021 as the global Coronavirus pandemic was nearly at its peak, FFCRA (Families First Coronavirus Response Act) Pub. L. 116-127 , was signed into law and administered under authority of the US Department of Labor. This government program was designed to provide up to two weeks of wages via tax credits to employers for those individuals were diagnosed with the virus, were caring for a family member with the virus, and among other provisions, provided paid leave for persons who suddenly found themselves without childcare. (SAC, Count 1, ¶ 1).

- That as of April 1, 2020, Amanda Eckles (Eckles) is a single mother of two children, suddenly found herself without childcare due to the pandemic, and was absent from work at Lancaster Heights that morning. (SAC, Count 1, ¶ 2).

- That upon then property manager Gina Holt posting the required poster for FFCRA, (as required by the FFRCA act) in the workplace on April 1, 2020, Plaintiff Jason Harlow took a photo of it for his own reference. (SAC, Count 1, ¶ 3).

- Noticing that Eckles was absent, and knowing about her personal situation, Harlow sent a copy of the government program poster regarding FFCRA to Eckles. (SAC, Count 1, ¶ 4).

- Realizing she likely would qualify for two weeks of pay under the FFCRA, Eckles contacted Holt, who then referred her to Rob McCrary (McCrary), Area Director for Princeton who was Eckles and Holt's superior. Upon calling McCrary and inquiring about this government mandated program, McCrary seemed more interested in who had informed her of this program than he was in assisting her. (SAC, Count 1, ¶ 5).

- That McCrary then called Holt, accusing her of sending a photo of the employment poster to Eckles. This conversation devolved into McCrary screaming at Holt though the phone for the entire staff to hear, which seemed to be a common occurrence when McCrary called the office. (SAC, Count 1, ¶ 6).

- That on April 3, 2020, Eckles suddenly found herself "laid off" from Lancaster, without pay, despite the law requiring that Princeton and Lancaster provide for two weeks of pay to individuals in her situation. Eckles, a single mother, suddenly found herself without income during a pandemic and resulting nationwide economic crisis, which caused feelings of anxiety, stress and mental anguish by this intentionally negligent act by Lancaster / Princeton. (SAC, Count 1, ¶ 7).

30459874
FP 41158988.1

**Alleged ADA Allegations – Failure to Accommodate**

- That such a negligent comment by Shelton against Harlow was discriminatory in nature, and **is in direct violation of the Americans with Disabilities Act**. There can be no threat of "consequences" when a person's disability prevents them from performing certain tasks. Thus Harlow reported the conduct to Princeton HR. (SAC, Count 1, ¶ 12) (emphasis added).

- That the next major incident with Humphrey would come on November 16, 2020, which was Harlow's first day back to work following his marriage on the previous Friday. It was on this day when Humphrey announced her new break policy, developed to purposely harm Harlow, in which employees were not allowed to leave the building, or a locked and fenced in area behind the shop … (SAC, Count 1, ¶ 74).

- That these actions by Humphrey made it impossible for Plaintiff Harlow to visit and utilize his then semi- retired white German Shepard service animal, who assisted with anxiety and PTSD who also lived on the property in Harlow's apartment. Additionally, this intentional act by Humphrey caused Harlow to be unable to get a clean pair of underwear after having "accidents", due to his disabilities. Imagine a 42 year old man, being told he has to ask special permission to change his underwear, because of Humphreys humiliating policy that one couldn't leave "for any reason"[1]. **This action is a direct violation of the** Illinois Human Rights Act, as well as **the Americans with Disabilities Act of 1990**, and plainly stated: are simply ludicrous, and are defenseless. These outright bullying actions further prevented Harlow from obtaining prescription medication from his Jeep or from his home for his medical needs.  (SAC, Count 1, ¶ 76) (emphasis added).

**Alleged Title VII Violations – Sexual Harassment and Retaliation**

- That between the dates of February 25, 2020 and May 14, 2020, Harlow was subjected to sexual harassment by Holt. (SAC, Count 1, ¶ 14).

- That such negligent comments made by Holt were unwelcome, offensive, and the repeated nature of them subjected Harlow to ongoing sexual harassment. (SAC, Count 1, ¶ 16).

- That beginning on April 17, 2020 until her termination on September 11, 2020, Gina Holt meticulously created a hostile work environment for Harlow and Whitesell, after his discrimination complaint. (SAC, Count 1, ¶ 18).

- That this was not an ordinary disciplinary meeting as would be expected in any modern workplace, yet instead resembled something that would occur in a third world country where human rights are nonexistent. Due to the extreme nature of this unfounded attack upon Harlow, **he then filed complaints with the Occupational Safety and Health**

**Administration (OSHA), as well as with the US Equal Employment Opportunity Commission** and Illinois Department of Human Rights. **Plaintiff Harlow received a "right to sue" letter from the EEOC as a result of these actions by McGraw and Humphrey.** Additionally, Harlow strongly believes that this assault upon him was a near duplicate of the kind of verbal abuse received by him from his father during his childhood, which in turned awakened memories and caused flashbacks that should have never been thought about again. Harlow, having been diagnosed with PTSD in 2018, suffered horrible chest pains, inability to urinate, labored breathing, and severe anxiety due to Humphrey and McGraw's intentional act. Feelings of fear would stir emotions within Harlow nearly every time he and Humphrey had interactions for the remaining time they worked together. Lastly, this appears, and we **believe this was a strong-armed attempt to force Harlow's resignation by management, who then would "stretch the truth" on documents relating to their conduct on Oct 7 to protect each other from the incoming EEOC complaint**, filed by Harlow, as there would be no honest way for Humphrey, et al to be called out on the matter. (SAC, Count 1, ¶ 64) (emphasis added).

- As Harlow's "attitude" was directly influenced by his mental health conditions, which were intensified by Humphrey and McGraw's actions, and as such, **is a protected class under the ADA**. (SAC, Count 1, ¶ 106) (emphasis added).

- That due to the unreasonable, intimidating and viciousness of Humphrey's written reprimand and verbal tirade upon Plaintiff, Harlow then filed written complaints with the **United States Equal Opportunity Commission**, the Illinois Department of Human Rights, and the United States Occupational Safety and Health Administration. (SAC, Count 35, ¶ 9) (emphasis added).

- That in response to Harlow's complaints to those agencies, Humphrey took it upon herself to retaliate, and thus removed Harlow from the after-hours on-call rotation for approximately one week, resulting in a financial loss of approximately $150 to Harlow… (SAC, Count 35, ¶ 10).

- That Princeton has an obligation to provide every employee a workplace free of discrimination, harassment, bullying, criminal acts, and protection from known hazards. However despite its written policy, Princeton/ Lancaster, and Humphrey have failed in these obligations to their employees as demonstrated by the intentional malicious acts by Humphrey and McGraw, sanctioned by management of Princeton/ Lancaster. (SAC, Count 35, ¶  25).

**Alleged OSHA Violations and Retaliation**

- That under the General Duty Clause of **the Occupational Safety and Health Act of 1970, 29 USC 654**: Each employer -- (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely

-8-

to cause death or serious physical harm to his employees; (2) shall comply with occupational safety and health standards promulgated under this Act. Princeton / Lancaster appear to have failed in this obligation. (SAC, Count 1, ¶ 61) (emphasis added).

- That this was not an ordinary disciplinary meeting as would be expected in any modern workplace, yet instead resembled something that would occur in a third world country where human rights are nonexistent. **Due to the extreme nature of this unfounded attack upon Harlow, he then filed complaints with the Occupational Safety and Health Administration (OSHA),** as well as with the US Equal Employment Opportunity Commission and Illinois Department of Human Rights. Plaintiff Harlow received a "right to sue" letter from the EEOC as a result of these actions by McGraw and Humphrey. Additionally, Harlow strongly believes that this assault upon him was a near duplicate of the kind of verbal abuse received by him from his father during his childhood, which in turned awakened memories and caused flashbacks that should have never been thought about again. Harlow, having been diagnosed with PTSD in 2018, suffered horrible chest pains, inability to urinate, labored breathing, and severe anxiety due to Humphrey and McGraw's intentional act. Feelings of fear would stir emotions within Harlow nearly every time he and Humphrey had interactions for the remaining time they worked together. Lastly, this appears, and we believe this was a strong-armed attempt to force Harlow's resignation by management, who then would "stretch the truth" on documents relating to their conduct on Oct 7 to protect each other from the incoming EEOC complaint, filed by Harlow, as there would be no honest way for Humphrey, et al to be called out on the matter. See exhibits J & K. (SAC, Count 1, ¶ 64) (emphasis added).

- That this chain of unsafe demands made by Humphrey would repeat itself multiple times in the coming months, as it appeared she had no empathy or concern for her employee's welfare. The demands, made directly by or through Humphrey included, but not limited to: 1. sending employees to enter a residential building full of carbon monoxide, exposing them to deadly gas without PPE, 2. Demanding employees to work in sub-freezing weather without ensuring employees were wearing appropriate cold weather gear, resulting in near frostbite by Ashton Hyatt in the 23°F temperatures. 3. Demanding that employees work under and around trees in which branches weighing hundreds of pounds were still falling due to the weight of ice following a major ice storm in January 2021, exposing workers to crushing hazards. 4. Telling an employee with a previous back injury who was complaining about the pain that a task was creating that she would "get used to it". 5. Allowing the maintenance supervisor to perform unsafe actions in which he received at least four electric shocks from. 6. Failing to inform employees and vendors of a potential COVID-19 case on property so they could avoid that particular unit while going door to door for pest treatments, thus placing Harlow, with a known compromised immune system at risk of contracting a deadly pathogen. 7. Failing to sanitize work spaces with EPA approved sterilizing cleaners after an employee tested positive for COVID-19. (SAC, Count 1, ¶ 67).

30459874
FP 41158988.1

- That the United States Occupational Health & Safety Administration (OSHA) defines workplace violence as "any act or threat of physical violence, harassment, intimidation, or other threatening disruptive behavior, that occurs at the worksite." (SAC, Count 1, ¶ 122).

- That due to the unreasonable, intimidating and viciousness of Humphrey's written reprimand and verbal tirade upon Plaintiff, Harlow then filed written complaints with the United States Equal Opportunity Commission, the Illinois Department of Human Rights, and the United States Occupational Safety and Health Administration. (SAC, Count 35, ¶ 9).

- That in response to Harlow's complaints to those agencies, Humphrey took it upon herself to retaliate, and thus removed Harlow from the after-hours on-call rotation for approximately one week, resulting in a financial loss of approximately $150 to Harlow… (SAC, Count 35, ¶ 10).

- That Princeton has an obligation to provide every employee a workplace free of discrimination, harassment, bullying, criminal acts, and protection from known hazards. However despite its written policy, Princeton/ Lancaster, and Humphrey have failed in these obligations to their employees as demonstrated by the intentional malicious acts by Humphrey and McGraw, sanctioned by management of Princeton/ Lancaster. (SAC, Count 35, ¶ 25).

- That Lancaster / Princeton knew or should have known that this tenant whom they leased property to, suffered from extreme mental illness, and her past behavior had been well documented and complained about by other tenants, yet Humphrey sent Harlow into her apartment alone, placing him directly into harm's way. (SAC, Count 38, ¶ 11).

- That under the **OSHA general clause**, Defendants had an obligation to furnish a workplace free from known hazards to Harlow. (SAC, Count 38, ¶ 12) (emphasis added).

22.     These numerous references to federal laws and the attachment of an EEOC Right to Sue Letter and OSHA complaint correspondence to the SAC are significantly more than the five references permitted by the court in *McElroy* to support removal.  *McElroy,* 730 F. Supp. at 805.

23.     As evidenced by their prominence in Plaintiffs' SAC, it is necessary to interpret the Department of Labor FFCRA regulations, ADA and Title VII standards and state of limitations case law, and OSHA standards and preemption law to litigate Plaintiffs' claims.

30459874
FP 41158988.1

**Plaintiffs' Second Amended Complaint Pleads Federal Causes of Action**

24. In addition to clearly relying upon the resolution of substantial questions of federal law, Plaintiffs also artfully pled federal claims in their SAC.

25. As set forth above, Plaintiffs factually pled alleged violations of the FFCRA (Pub. L. No. 116-127, 134 State. 178 (Mar. 18, 2020)), ADA (42 U.S.C. § 12111 *et seq.*), Title VII (42 U.S.C. § 2000e *et seq.*), and OSHA (29 U.S.C. § 666(e)) and are seeking remedies for not only the alleged violations but also for purported retaliation for filing complaints with various federal agencies. *See, e.g.*, Ex. 3, SAC, Count 1, ¶¶ 12, 64, 76, Count 35 ¶ 10.

26. The fact that Plaintiffs' SAC only specifies relief pursuant to Illinois law is immaterial as the "artful pleading" doctrine requires the Court to look beyond the face of the complaint to expose any federal claim. *See McElroy*, 730 F.Supp. at 806.

27. Accordingly, based upon Plaintiffs' SAC, this Court has original federal question jurisdiction under 28 U.S.C. § 1331, as the claims alleged in the SAC fall under the laws of the United States.

28. This Court further has supplemental jurisdiction over Plaintiffs' Illinois common-law claims pursuant to Section 1367(a) because it "derives from a common nucleus of operative facts" of Plaintiffs' federal claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); 28 U.S.C. § 1367(a).

29. For these reasons, this cause of action has been properly removed in its entirety to this Court pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446.

30. Removal is proper to the United States District Court for the Central District of Illinois because this federal district encompasses McClean County, Illinois.

31. All served Defendants consent to the removal of this action.

32.     Defendants state that a true and correct copy of this Notice of Removal will be filed with the Clerk of the Circuit Court of McClean County, Illinois, promptly after Defendants have filed this Notice of Removal, in accordance with 28 U.S.C. § 1446(d).

WHEREFORE, Defendants, hereby notify this Court, Plaintiffs, and the Circuit Court of McClean County, Illinois, that the above-captioned matter, now pending against it in the Circuit Court of McClean County, Illinois has been removed to this Court.

Dated: July 29, 2021

Respectfully submitted,

By: *s/ Craig R. Annunziata*
Craig R. Annunziata
Scott C. Fanning
FISHER & PHILLIPS LLP
10 South Wacker Drive, Suite 3450
Chicago, Illinois 60606
(312) 346-8061 Phone
(312) 346-3179 Facsimile
Cannunziata@fisherphillips.com
sfanning@fisherphillips.com

**Attorneys for Defendants Lancaster Heights Owner, LLC, Princeton Management, LLC, Princeton Acquisitions, LLC, and Amy M. Humphrey**

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2021, I filed the foregoing Notice of Removal via the Court's ECF system, and served the foregoing Notice of Removal by certified mail and first class mail, postage pre-paid, upon:

Jason Harlow  
1708 Springfield Rd Apt 12  
Bloomington, IL 61701

Amanda Eckles  
501 E. Grove St. #1  
Bloomington, IL 61701

By: *s/ Craig R. Annunziata*  
Craig R. Annunziata

30459874  
FP 41158988.1