E-FILED
Thursday, 29 July, 2021  05:13:20 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT A

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT | SUMMONS | For Court Use Only |
|---|---|---|
| McLean _____ COUNTY | | A FEE WILL BE DUE AT THE TIME OF FILING AN APPEARANCE OR ANSWER OR AS OTHERWISE DIRECTED BY THE COURT. YOUR FILING FEE WILL BE: $ 207.00 |

| Instructions ▾ | |
|---|---|
| Enter above the county name where the case was filed. | Jason R. Harlow / Amanda J. Eckles<br>**Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter your name as Plaintiff/Petitioner. | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v. |
| Enter the Case Number given by the Circuit Clerk. | Princeton Management, LLC, et al.<br>**Defendant / Respondent** *(First, middle, last name)* |

Case area right column:
2021 L 0000041
**Case Number**

| | |
|---|---|
| In 1, if your lawsuit is for money, enter the amount of money you seek from the Defendant/ Respondent. | **1. Information about the lawsuit:**<br>Amount claimed:    $ _____ |
| In 2, enter your contact information. If more than 1 person is bringing this lawsuit, attach an *Additional Plaintiff/Petitioner Contact Information* form. | **2. Contact information for the Plaintiff/Petitioner:**<br>Name *(First, Middle, Last):*  Jason R. Harlow<br>Street Address, Apt #:  1436 E. College Ave Apt 1<br>City, State, ZIP:  Normal, IL 61761<br>Telephone:  (417) 848-5095<br>See attached for additional Plaintiff/Petitioner contact information |
| In 3, enter the name of the person you are suing and their address. If more than 1 person is being sued, attach an *Additional Defendant/Respondent Contact Information* form. | **3. Contact information for the Defendant/Respondent:**<br>Name *(First, Middle, Last):*  Princeton Management, LLC  R/A MATTHEW LESTER<br>Street Address, Apt #:  2550 South Telegraph Rd. #200<br>City, State, ZIP:  Bloomfield Twp, MI 48302<br>Telephone: _____<br>See attached for additional Defendant/Respondent contact information |

| | |
|---|---|
| **Important Information for the person receiving this form:** | You have been sued.<br>Follow the instructions on the next page on how to appear/answer.<br> • If you do not appear/answer the court may decide the case without hearing from you and enter a judgment against you for what the plaintiff/petitioner is asking.<br> • Your written appearance/answer must be filed on time and in the proper form.<br> • Forms for a written appearance/answer are available here:<br>   http://www.illinoiscourts.gov/forms/approved/default.asp<br>If you cannot afford to pay the fee for filing your appearance/answer, ask the circuit clerk for an *application for waiver of court fees.*<br>You should read all of the documents attached. |

Enter the Case Number given by the Circuit Clerk: 2021 L 0000041

| | |
|---|---|
| In 4, the Circuit Clerk will give you the court date or appearance date, check any boxes that apply, and include the address of the court building and room where the Defendant/ Respondent must file their response. | **4.   Instructions for person receiving this form (Defendant/Respondent):**<br>To respond to this *Summons* you must:<br>☐ Go to court:<br>   On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.<br>   Address: _____ Court Room: _____<br>   City, State, ZIP: _____<br><br>☐ File a written *Appearance* and *Answer/Response* with the court:<br>   On or before this date: _____ at this time: _____ ☐ a.m. ☐ p.m.<br>   Address: _____<br>   City, State, ZIP: _____<br><br>☐ File a written *Appearance* and *Answer/Response* with the court within 30 days from the day you receive this *Summons* (listed below as the "Date of Service").<br>   On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.<br>   Address: _____<br>   City, State, ZIP: _____ |

| | |
|---|---|
| **STOP!**<br>The Circuit Clerk will fill in this section. | **Witness this Date:**      3/17/2021 _____<br><br>**Clerk of the Court:** *Cnn R Evelot G* /s/ Corinna Strawn |

*(Seal of Court — McLean County Circuit Court, 11th Judicial Circuit, Illinois)*

| | |
|---|---|
| **STOP!**<br>The officer or process server will fill in the Date of Service. | **This *Summons* must be served within 30 days of its date, listed above.**<br><br>Date of Service: _____<br>*(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant/Respondent or other person.)* |

| | |
|---|---|
| **Plaintiff/Petitioner:** | To serve this *Summons*, you must hire the sheriff (or a private process server outside of Cook County) to deliver it and your Complaint/Petition to the Defendant/Respondent. If the sheriff (or private process server outside of Cook County) tries but can't serve the *Summons*, fill out another summons and repeat this process. |

| | |
|---|---|
| **Attention:** | E-Filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp, or talk with your local circuit clerk's office. |

# IN AND FOR THE ELEVENTH JUDICIAL CIRCUIT OF THE STATE OF ILLINOIS

## McLEAN COUNTY ILLINOIS

**JASON R. HARLOW**

**AMANDA J. ECKLES**

       PLAINTIFFS

    -Vs.-                          LAW NUMBER:

**AMY M. HUMPHREY**, INDIVIDUALLY AND IN HER CAPACITY AS PROPERTY MANAGER OF LANCASTER HEIGHTS; **PRINCETON MANAGEMENT D/B/A LANCASTER HEIGHTS OWNER, LLC**; AN ILLINOIS LIMITED LIABILITY CORPORATION; **PRINCETON MANAGEMENT, LLC**, A MICHIGAN LIMITED LIABILITY CORPORATION; **UNAMED CONSPIRATORS & ACTORS**

       DEFENDANTS

## COMPLAINT AT LAW AND

## DEMAND FOR TRIAL BY JURY

## JURISDICTION & VENUE

Pursuant to 735 ILCS 5/2-103, this Court has jurisdiction over the parties, and the complaint is hereby filed in the Defendant's county of principal operation, and / or where all parties conduct usual business.

1

## INDISPUTABLE FACTS

1. That Plaintiff Jason R. Harlow began employment with Princeton Management on or about December 18, 2019 as a maintenance tech, and his employment with Defendants terminated on April 13, 2021.

2. That Ashton Hyatt began employment with Princeton Management on or about October 13, 2020 as a maintenance tech.

3. That Plaintiff Amanda Eckles began employment with Princeton Management on or about January 6, 2020 as a housekeeper, and his employment with Defendants terminated on April 13, 2021.

4. That Defendant Amy M. Humphrey began employment with Princeton Management on or about September 16, 2020 as the Property Manager for Lancaster Heights.

5. That Lancaster Heights Owner, LLC is an apartment community located at 1462 E. College Ave Normal, IL, encompassing 16 acres with 198 units. This business is a foreign LLC organized in Illinois on August 19, 2019.

6. That Princeton Management, LLC, is a Bloomfield Hills, Michigan based property management company which was organized on January 8, 1997 by Matthew B. Lester.

## CONTINUING VIOLATIONS

The wrongful acts and omissions giving rise to Defendant's liability in this action commenced in September 2020 and have been and are continuing in nature as of the date of the filing of this complaint. Plaintiff reserves the right to amend this complaint as new and additional facts and claims arise or become known to Plaintiffs. Defendants are reminded that pursuant to 720 ILCS 5/32-4, witness tampering is a class 3 felony.

## COUNT 1-15
## FALSE IMPRISONMENT

NOW COMES PLAINTIFF, Jason R. Harlow, who respectfully prays this Honorable Court as follows:

1. That Plaintiff Jason Harlow began employment with Princeton Management as a maintenance tech on or about December 18, 2019.

2. That Defendant Amy Humphrey began employment with Princeton Management on or about September 16, 2020 as the Property Manager for Lancaster Heights, and as such, is Harlow's superior.

3

3. That on or about November 16, 2020, Humphrey instituted a new break policy amongst all employees. Her new unwritten policy stated that all breaks must be taken inside the office, and that no one could leave the office or the locked and fenced area immediately behind the office, on break for any reason whatsoever. Humphrey indicted that anyone leaving the office for any reason, would be subject to discipline, up to and including termination of employment, along with a loss of housing.

4. That by threatening employees with loss of income and housing via reprimand, Humphrey was callously abusing her authority while creating an atmosphere like that of a prison. This reckless, outrageous, demeaning, and over-the-top conduct by Humphrey continued for 30 minutes per day over the course of 8 days.

5. That on November 16, 2020 at approximately 10am, Defendant Amy Humphrey did willfully and unlawfully restrain against his will, Plaintiff Jason R. Harlow for a period of about 15 minutes.

6. That on November 17, 2020 at approximately 10am, Defendant Amy Humphrey did willfully and unlawfully restrain against his will, Plaintiff Jason R. Harlow for a period of about 15 minutes.

4

7. That on November 17, 2020 at approximately 3pm, Defendant Amy Humphrey did willfully and unlawfully restrain against his will, Plaintiff Jason R. Harlow for a period of about 15 minutes.

8. That on November 18, 2020 at approximately 10am, Defendant Amy Humphrey did willfully and unlawfully restrain against his will, Plaintiff Jason R. Harlow for a period of about 15 minutes.

9. That on November 18, 2020 at approximately 3pm, Defendant Amy Humphrey did willfully and unlawfully restrain against his will, Plaintiff Jason R. Harlow for a period of about 15 minutes.

10. That on November 19, 2020 at approximately 10am, Defendant Amy Humphrey did willfully and unlawfully restrain against his will, Plaintiff Jason R. Harlow for a period of about 15 minutes.

11. That on November 19, 2020 at approximately 3pm, Defendant Amy Humphrey did willfully and unlawfully restrain against his will, Plaintiff Jason R. Harlow for a period of about 15 minutes.

12. That on November 20, 2020 at approximately 10am, Defendant Amy Humphrey did willfully and unlawfully restrain against his will, Plaintiff Jason R. Harlow for a period of about 15 minutes.

13. That on November 20, 2020 at approximately 3pm, Defendant Amy Humphrey did willfully and unlawfully restrain against his will, Plaintiff Jason R. Harlow for a period of about 15 minutes.

14. That on November 23, 2020 at approximately 10am, Defendant Amy Humphrey did willfully and unlawfully restrain against his will, Plaintiff Jason R. Harlow for a period of about 15 minutes.

15. That on November 23, 2020 at approximately 3pm, Defendant Amy Humphrey did willfully and unlawfully restrain against his will, Plaintiff Jason R. Harlow for a period of about 15 minutes.

16. That on November 24, 2020 at approximately 10am, Defendant Amy Humphrey did willfully and unlawfully restrain against his will, Plaintiff Jason R. Harlow for a period of about 15 minutes.

17. That on November 24, 2020 at approximately 3pm, Defendant Amy Humphrey did willfully and unlawfully restrain against his will, Plaintiff Jason R. Harlow for a period of about 15 minutes.

18. That on November 25, 2020 at approximately 10am, Defendant Amy Humphrey did willfully and unlawfully restrain against his will, Plaintiff Jason R. Harlow for a period of about 15 minutes.

19. That on November 25, 2020 at approximately 3pm, Defendant Amy Humphrey did willfully and unlawfully restrain against his will, Plaintiff Jason R. Harlow for a period of about 15 minutes.

20. That on November 16, 2020 at approximately 10am, Defendant Amy Humphrey did willfully and unlawfully restrain against his will, Plaintiff Jason R. Harlow for a period of about 15 minutes.

21. That Humphreys reckless actions of unlawfully restraining the employees entrusted into her care, runs contrary to 720 ILCS 5/10-3 *" Unlawful Restraint": (a) A person commits the offense of unlawful restraint when he or she knowingly without legal authority detains another"*. The violation of this statute is a Class 4 felony, as well as a civil tort in the State of Illinois.

7

22. That Humphrey is not a commissioned peace officer of the State of Illinois, nor is Humphrey an agent of the United States Government, and as such, had no legal authority to willfully restrain, with malice, up to five of her employees against their will. As such, Humphrey is potentially subject to multiple felony counts of Unlawful Restraint, as well as potentially a hate crime charge as her intended target, Jason R. Harlow, is both a gay and disabled individual and as such, receives additional protections under 720 ILCS 5/12-7.1

23. That Harlow feared for the loss his livelihood and his housing if he dared to leave the building in defiance of this illegal and reckless action by Humphrey..

24. That Harlow suffered emotional trauma, the loss of freedom, the loss of privacy, the inability to contact his healthcare providers, the inability to obtain prescription medications, and further suffered emotional distress as a result of the Defendant's willful actions.

25. That the actions of Humphrey and Princeton are not indicative of an Equal Opportunity Employer, in which employees were made to suffer confinement, fear, & emotional distress as a condition of employment.

8

## COUNT 16-31

## FALSE IMPRISONMENT

1. That Plaintiff Amanda Eckles began employment with Princeton Management as a housekeeper on or about January 6, 2020.

2. That Defendant Amy Humphrey began employment with Princeton Management on or about September 16, 2020 as the Property Manager for Lancaster Heights, and as such, is Eckles's superior.

3. That on or about November 16, 2020, Humphrey instituted a new break policy amongst all employees. Her new unwritten policy stated that all breaks must be taken inside the office, and that no one could leave the office or the locked and fenced area immediately behind the office, on break for any reason whatsoever. Humphrey indicted that anyone leaving the office for any reason, would be subject to discipline, up to and including termination of employment, along with a loss of housing.

4. That by threatening employees with loss of income and housing via reprimand, Humphrey was callously abusing her authority while creating an atmosphere like that of a prison. This reckless, outrageous, demeaning, and over-the-top conduct by Humphrey continued for 30 minutes per day over the course of 8 days.

9

5. That on November 16, 2020 at approximately 10am, Defendant Amy Humphrey did willfully and unlawfully restrain against her will, Plaintiff Amanda Eckles for a period of about 15 minutes.

6. That on November 16, 2020 at approximately 3pm, Defendant Amy Humphrey did willfully and unlawfully restrain against her will, Plaintiff Amanda Eckles for a period of about 15 minutes.

7. That on November 17, 2020 at approximately 10am, Defendant Amy Humphrey did willfully and unlawfully restrain against her will, Plaintiff Amanda Eckles for a period of about 15 minutes.

8. That on November 17, 2020 at approximately 3pm, Defendant Amy Humphrey did willfully and unlawfully restrain against her will, Plaintiff Amanda Eckles for a period of about 15 minutes.

9. That on November 18, 2020 at approximately 10am, Defendant Amy Humphrey did willfully and unlawfully restrain against her will, Plaintiff Amanda Eckles for a period of about 15 minutes.

10. That on November 18, 2020 at approximately 3pm, Defendant Amy Humphrey did willfully and unlawfully restrain against her will, Plaintiff Amanda Eckles for a period of about 15 minutes.

11. That on November 19, 2020 at approximately 10am, Defendant Amy Humphrey did willfully and unlawfully restrain against her will, Plaintiff Amanda Eckles for a period of about 15 minutes.

12. That on November 19, 2020 at approximately 3pm, Defendant Amy Humphrey did willfully and unlawfully restrain against her will, Plaintiff Amanda Eckles for a period of about 15 minutes.

13. That on November 20, 2020 at approximately 10am, Defendant Amy Humphrey did willfully and unlawfully restrain against her will, Plaintiff Amanda Eckles for a period of about 15 minutes.

14. That on November 20, 2020 at approximately 3pm, Defendant Amy Humphrey did willfully and unlawfully restrain against her will, Plaintiff Amanda Eckles for a period of about 15 minutes.

15. That on November 23, 2020 at approximately 10am, Defendant Amy Humphrey did willfully and unlawfully restrain against her will, Plaintiff Amanda Eckles for a period of about 15 minutes.

16. That on November 23, 2020 at approximately 3pm, Defendant Amy Humphrey did willfully and unlawfully restrain against her will, Plaintiff Amanda Eckles for a period of about 15 minutes.

17. That on November 24, 2020 at approximately 10am, Defendant Amy Humphrey did willfully and unlawfully restrain against her will, Plaintiff Amanda Eckles for a period of about 15 minutes.

18. That on November 24, 2020 at approximately 3pm, Defendant Amy Humphrey did willfully and unlawfully restrain against her will, Plaintiff Amanda Eckles for a period of about 15 minutes.

19. That on November 25, 2020 at approximately 10am, Defendant Amy Humphrey did willfully and unlawfully restrain against her will, Plaintiff Amanda Eckles for a period of about 15 minutes.

20. That on November 25, 2020 at approximately 3pm, Defendant Amy Humphrey did willfully and unlawfully restrain against her will, Plaintiff Amanda Eckles for a period of about 15 minutes.

21. That Humphreys reckless actions of unlawfully restraining the employees entrusted into her care, runs contrary to 720 ILCS 5/10-3 *"unlawful restraint: (a) A person commits the offense of unlawful restraint when he or she knowingly without legal authority detains another"*. The violation of this statute is a Class 4 felony, as well as a civil tort in the State of Illinois.

22. That Humphrey is not a commissioned peace officer of the State of Illinois, nor is Humphrey an agent of the United States Government, and as such, had no legal authority to willfully restrain, with malice, up to five of her employees against their will. As such, Humphrey is potentially subject to multiple felony counts of *unlawful restraint.*

23. That Eckles feared for the loss of her livelihood and her housing if she dared to leave the building in defiance of this illegal and reckless action by Humphrey.

24. That Eckles suffered emotional trauma, the loss of freedom, the loss of privacy, the inability to see her children who were a mere 223 feet away, the inability to exercise,  as a result of the Defendant's willful actions.

13

25. That the actions of Humphrey and Princeton are not indicative of an Equal Opportunity Employer, in which employees were made to suffer confinement, fear, & emotional distress as a condition of employment.

## Case Law & Analysis Supporting Plaintiff's Claims for Counts 1-31

The tort of false imprisonment is defined as "an unlawful restraint of an individual's personal liberty or freedom of locomotion." *Toothman v. Hardee's Food Sys., 304 Ill. App. 3d 521 (5th Dist. 1999)*. The essential elements of a cause of action for false imprisonment are that: (1) The plaintiff was restrained by the defendant; and (2) The defendant acted without having reasonable grounds to believe that the plaintiff committed an offense.

*Reynolds v. Menard, Inc., 365 Ill. App. 3d 812 (1st Dist. 2006)*; *Toothman v. Hardee's Food Sys., 304 Ill. App. 3d 521 (5th Dist. 1999)*. The individual must be aware of the confinement *(Restatement (Second) of Torts, (§ 35)*, and mere incidental confinement without intent does not cause false imprisonment. *Hanna v. Marshall Field & Co., 279 Ill. App. 3d 784 (1st Dist. 1996)*. The confinement must be complete. *Prosser, Torts, Section 11 at 47 (5th ed. 1984)*. A false imprisonment does not occur, for example, when one individual locks a young, athletic person in a room with an open window at a height of four feet from the ground outside.

14

Further, confinement may be by physical force, physical barrier, or threat of

physical force. An unlawful restraint may be effected by words alone, by acts alone, or

both. *Johnson v. Target Stores, Inc.*, 341 Ill. App. 3d 56, 79 (1st Dist. 2003); *Marcus v.*

*Liebman,* 59 Ill. App. 3d 337, 339 (1st Dist. 1978). For example, a psychiatrist who

threatens a hospitalized mental patient with court-ordered commitment may create a

false imprisonment. *Marcus* at 341. To constitute a false imprisonment, however, the

submission must be to a current threatened and reasonably apprehended force.

Threats for future action are insufficient to support a claim of false imprisonment.

*Id. Prosser, Torts, Section 11 at 50 (5th ed. 1984).*

## PRAYER FOR RELIEF FOR COUNTS 1-31

Whereas the above described actions by Amy Humphrey and Princeton Management have

clearly devolved into what any reasonable person would describe as outrageous acts which

are unacceptable in either a workplace or any other location in this State. This type of

systematic and intentional acts cannot be allowed to stand. Therefore this Court is

respectfully prayed for the following relief:

15

1. An ORDER OF NO CONTACT signed by this Honorable Court AGAINST Amy Humphrey and FOR all Plaintiff's named in this complaint for a period of twenty four calendar months due to legitimate concerns for Plaintiff's safety, security and enjoyment of life.

2. A judgment of at least $500,000 AGAINST Amy Humphrey Individually and FOR PLAINTIFFS due to the outrageous act of detaining without any legal justification or authority, three employees, for a collective total of over 11 hours of FALSE IMPRISONMENT in the workplace, or such relief as this Court deems appropriate.

3. A judgment of at least $1,500,000 AGAINST Princeton Management and FOR Plaintiffs, or such relief as this Court deems appropriate for knowingly allowing three of its employees entrusted into their care to be held against their will for a period of over eleven hours over a period of eight days due to its employee Amy Humphrey's unlawful, malicious, and utterly unacceptable actions against Plaintiffs.

4. Any and all other relief as deemed appropriate by this Court.

5. Any and all applicable costs of suit, including any applicable attorney's fees.

4. That during this conference call, the restriction regarding the willful detainment and confinement of the aforementioned employees was lifted, however break times were shortened to just 20 minutes per day from the previous 30 without justification.

5. That Plaintiffs have reason to believe that on or about November 16, 2020, prior to Humphrey announcing that she was going to hold her employees captive, Humphrey contacted and discussed the topic with unknown conspirators employed by Princeton Management, possibly including both McGraw and McCrary. Plaintiff's fully expect to uncover the identities of these individuals through discovery.

6. That collectively these conspirators, including but not limited to Humphrey, working in concert conspired to commit false imprisonment against the Plaintiffs.

7. That these conspirators, including but not limited to Humphrey, knew or should have known, that holding people against their will would be considered a serious offense in every state.

8. That on or about Friday January 15, 2021, Humphrey called a meeting with all three employees in the maintenance department, including Harlow and Hyatt.

18

## COUNT 32

## CIVIL CONSPIRACY & CONCERT OF ACTION

NOW COMES PLAINTIFFS, Jason R. Harlow and Amanda Eckles who replead all counts listed herein and respectfully prays this Honorable Court as follows:

1. That beginning on or about November 16, 2020 through November 25, 2020, Defendant Amy Humphrey did falsely imprison, against their will, three of the employees entrusted into her care, named here as Plaintiffs in this Complaint.

2. That each employee was unlawfully restrained for a total of about 4 hours each, for a collective total of over 11 hours of unlawful captivity.

3. That on November 25, 2020, a teleconference was held with all six employees of Lancaster Heights as well as with Mr. Rob McCrary, Area Director for Princeton. Also joining the call was Ms. Deborah McGraw, secretary to Mr. McCrary. This call came six days after Harlow inquired with Princeton Human Resources about the legality of such action, and demonstrates that both McCrary and McGraw knew about employees being held against their will, yet turned a blind eye to the unlawful behavior being demonstrated at Lancaster Heights by Amy Humphrey.

9. That during this meeting, Humphrey described a new policy in which any locked out tenants who request that maintenance to let them into their apartment, would pay a $25 cash fee to the maintenance employee, who would then keep said funds, if available.

10. That Humphrey then instructed her maintenance employees to not punch in or out on the time clock, when responding to lockouts, effectively demanding that they work off the clock in these instances.

11. That Humphrey indicated that Area Director Rob McCrary had assisted and conspired in and through a concert of action developing this policy, which is in direct contradiction of the *United States Fair Labor Standards Act of 1983, as amended 29 U.S.C. 201, et seq.* which requires that non-exempt employees be paid for all time worked for the benefit of the employer. Additionally this action would require employees to participate in mandated work without compensation.

12. That these conspiracies to commit 31 counts of false imprisonment, as well as mandating that employees work off the clock without compensation, resulted in extreme mental anguish and stress to the Plaintiffs who demand to be made whole.

### Basic Law & Analysis Supporting Plaintiff's Claims for Count 32

Civil conspiracy involves two or more persons who combine for the purpose of accomplishing, by their concerted action, either a lawful purpose by unlawful means or an unlawful purpose by lawful means. *Smith v. Eli Lilly & Co., 137 Ill. 2d 222 (1990); Vance v. Chandler, 231 Ill. App 3d 747 (1992).*

A conspirator need not participate in all activities of a conspiracy, nor become a member at its inception. It is only necessary that he knowingly contribute his efforts in furtherance of it. A passenger in a motor vehicle who verbally encourages and assists the driver of that vehicle to drive recklessly can be held liable on a theory of concert of action (civil conspiracy) for the injuries resulting in other passengers injured in an accident caused by the reckless driving. *Sanke v. Bechina, 216 Ill. App 3d 962 (1991).* Similarly, it has been held that parallel conduct of two or more persons or companies may serve as circumstantial evidence of a civil conspiracy among manufacturers of the same or similar products. *McClure v. Owens Corning Fiberglas Corp. 188 Ill. 2d 102, 135 (Ill. 1999).*

The basis of the legal theory of concert of action is found in Section 876 of the Restatement (second) of Torts (1979). That section provides that a person can be legally liable for harm resulting to a third person from the tortious conduct of another if that person: (a) does a tortious act in concert with the other or pursuant to a common design with him; (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so conduct himself; or (c) gives substantial assistance or

20

encouragement to the other in accomplishing a tortious result, and his own conduct, separately considered, constitutes a breach of duty to the third person.

## PRAYER FOR RELIEF FOR COUNT 32

Whereas the above described actions by Amy Humphrey, Princeton Management, and other unnamed conspirators working in concert with Humphrey, have resulted in irreparable harm to Plaintiffs. At no time should a corporation plan, plot, scheme, design, or otherwise develop plans specifically designed to harm its employees with actions which were known, or should have been known to Defendants as potentially illegal acts. Therefore Plaintiffs Jason Harlow, and Amanda Eckles respectful pray this honorable court as follows:

1. An amount of money, to be determined by this Court, to penalize Defendant Amy Humphrey Individually, who willfully and maliciously participated in conspiracy to commit False Imprisonment against Plaintiffs.

2. An amount of money, to be determined by this Court, to penalize Defendant Princeton Management, whose employees willfully and maliciously participated in conspiracy to commit False Imprisonment against Plaintiffs.

3. Any and all other relief as determined appropriate by this Court.

4. Any and all applicable costs of suit including any applicable attorney's fees.

## COUNT 33

## NEGLIGENT HIRING, TRAINING, SUPERVISION, RETENTION AND DISCIPLINE

NOW COMES PLAINTIFFS, Jason R. Harlow and Amanda Eckles who replead all counts listed herein, and respectfully prays this Honorable Court as follows:

1. That Defendant Princeton Management D/B/A Lancaster Heights Owner, LLC did hire, and was / is directly responsible for the actions of their employees, including but not limited to Defendant Amy Humphrey.

2. That Humphrey turned the workplace known as Lancaster Heights into that of a prison-like environment, the likes of which no Plaintiff has ever seen nor experienced.

3. That Humphrey willingly held three employees against their will for a total of 45 times between November 16 and November 25, 2020, thus conducting herself in contradiction to both established laws, morals and ethics.

4. That Humphrey has single handedly treated each Plaintiff with contempt, malice, hate, unprofessionalism, a ghastly attitude, extreme rudeness, sneering facial expressions, and has placed the lives and safety of her employees in peril, which has resulted in every

22

never received the promised call back from "Nancy" (last name unknown) who is a high level manager at Princeton.

7. That Princeton knew, or should have known, that Humphrey's unacceptable actions and behaviors were unreasonable, abusive, and possibly illegal, yet Princeton continued to ignore the plight of its employees who were working in a hellish work environment,  instead empowering Humphrey to continue as she had been.

8. That Princeton has a duty and obligation to it employees to provide a safe workplace free of discrimination, free of bullying, free of illegal actions, free of abuse, and free from outright misconduct by Humphrey, yet failed in its obligation to adequately supervise Humphrey.

9. That no member of Princeton Management team had even visited Lancaster Heights since October 20, 2020, not returning until over 90 days had elapsed.

10. That no company could reasonably expect to supervise anyone including Humphrey by allowing over 90+ days between supervisory visits, as anyone can act "normal and friendly" during short telephone and video conferences, as they play themselves as a victim and report false information to her superiors.

24

employee filing complaints against her at the corporate level. However nothing changed after these complaints were made, indicating that Princeton knew about the ongoing abuses of their employees, but failed to act to protect them from Humphrey's continuous repugnant behavior.

5. That on or about December 18, 2020 Plaintiff Harlow did fax a handwritten letter to Princeton HR, as well as telephoned the corporate office to report additional misconduct by Humphrey regarding an incident that same morning. Humphrey, again looking for anything to get Harlow in trouble for, criticized him about a previous night's service call which according to Humphrey, was done all wrong. Humphrey approached the conversation in her usual hellish attitude. Harlow had completed the call in the exact same manner as he had done dozens of previous times without incident or reprimand, yet once again it wasn't good enough for Humphrey. Harlow quickly grew tired of Humphrey's demeaning attitude, her angry facial expressions, and the irresponsible interrogation which was taking place, and removed himself from the room.

6. That on or about December 21, 2020, Harlow received a response from Princeton HR Manager Kathy Poliquin which stated in part "I am in receipt of your recent allegations of harassment dated Friday December 18, 2020, regarding Property Manager, Amy Humphrey. After investigating your claims, **we have determined that Amy was acting within the scope of her duties and responsibilities as Property Manager and found no evidence of wrongdoing on her part**." Poliquin then insinuated that Plaintiff must respect the individual who was abusing him, or face termination. Further, Harlow

control that Humphrey attempts to assert over her employees is outright harassment, and fully meets the definition of criminal Intimidation 720 ILCS

14. That Humphrey demands compliance with her orders or else no matter what, while expecting employees to put their health and safety in jeopardy simply to appease her. Examples of this would include the November 1, 2020 incident with Harlow, when he was thereafter written up for not handling raw sewage without the appropriate PPE.

15. In another example of Humphrey's unreasonable demands, on January 1, 2021, maintenance supervisor Alfred Stanley was unable to make the 16 mile journey from his home in Heyworth, IL to the Lancaster property due to treacherous road conditions. According to the Ice Storm Warning issued at 3:18 AM by the National Weather Service, verbiage used in this government issued bulletin to discourage travel included "Dangerous travel conditions", "Travel could be nearly impossible", & "Travel is strongly discouraged". Yet Humphrey reprimanded Stanley because he could not make it safely to work, once again demonstrating that she demands her employees to do what she says no matter the cost to health, safety, and well-being of her employees. Stanley would later abruptly leave the employment at Princeton on March 3, 2021 due to Humphrey's ongoing intimidating, abusive, and condescending attitude.

16. On January 4, 2021, both Harlow & Hyatt were instructed to start picking up the branches which had fallen during the previous weekend's ice storm. This instruction was given despite the fact that horribly dangerous conditions existed around nearly every tree

26

11. That employees of Princeton who work at Lancaster Heights have only received company provided training in two areas: Fair Housing and Sexual Harassment, the latter coming only after it was mandated by the State of Illinois on July 1, 2020. No other types of training have been provided, despite the fact that its employees are subjected to multiple hazards while on the job. Additionally, no vaccines have been offered by the company to protect its employees from health hazards associated with their job.

12. That Defendant Humphrey never leaves her desk or the office to supervise any of her employees, often meaning employees are left to work on their own, without any supervision or wellness checks, for typically eight hours per day. Yet Humphrey is always ready to criticize and reprimand the employees entrusted into her care for any minor thing, despite having never observed most of their work.

13. That despite never venturing out of the office to concern herself with the seven hours and forty minutes employees are working, Humphrey will harass, stalk, place under surveillance and ostracize any employee about a ten minute break, which she appears to be fixated on due to her domineering and micromanaging personality, as the Plaintiffs never stop hearing about break times to the point of driving the Plaintiffs nearly insane. Humphrey demanded multiple times to "see" employees coming and going from break, every single day, so she could further control more aspects of their lives, even going as far as to note the time of arrival and departure from the maintenance shop, and criticizing employees for spending "too long in the bathroom". Checking in and out in this fashion is something Plaintiffs have not experienced since childhood. This demeaning and humiliating

on the 16 acre property, due to ½" of ice still present on every branch. This ice had entire trees bent over, with huge limbs up to twenty five feet long, cracking and falling from the sky without warning. When this information was given to Humphrey via Alfred Stanley, Humphrey was not swayed from her demands. Neither Hyatt nor Harlow were offered any sort of head protection nor was any available to them, once again demonstrating Lancaster Heights lack of a culture of safety. Further, Humphrey demanded that both Hyatt and Harlow work outdoors in subfreezing weather for a total of 8 hours, and only allowed them 20 minutes to warm themselves, which as smokers ended up being outside back in the elements. This meant Plaintiffs received exactly zero minutes of work time in which to warm themselves.  This intentional act resulted in near frostbite in the feet and hands of Ashton Hyatt, due to a lack of appropriate winter weather protection. The actions described about Humphrey in this paragraph alone starkly demonstrates the lack of decision making skills, a lack of supervisory skills, a lack of common sense, a lack of dignity, and an inability to show even one ounce of empathy, respect, care, concern, or sympathy for the employees who have been subjected to this monster.


17. That on March 5, 2021, Ashton Hyatt, received a positive COVID-19 test result after having worked in close proximity with both Harlow & Eckles for 2 of the previous 3 days. Hyatt notified Harlow at 7:23am of his diagnosis, and had previously notified Humphrey at around 6:45 am that same day. Humphrey allowed Eckles to work all day putting residents at potential risk of contracting a known deadly pathogen until notifying her of the potential exposure at about 1:30 pm, some seven hours to elapse since she was notified. No COVID-19 test was required of either Harlow or Eckles before resuming work. Additionally, Humphrey negligently chose not to instruct any staff member to sanitize any surfaces or

27

areas that could have been infected with COVID-19, including buildings that house Lancaster's residents, indicating absolutely no concern for the health and wellbeing of her employees nor her residents. Humphrey and Princeton also failed to notify any resident of a potential exposure. Further, Humphrey and Princeton negligently failed to notify Alfred Stanley, who had quit the day before due to the actions of Humphrey, that he had potentially been exposed to a deadly pathogen.

18. That on Monday March 8, 2021, Harlow escorted Shad from the contracted pest control company to approximately 24 housing units on property. While performing services in building 1432, Harlow knocked on a resident's door who had previously notified Humphrey that they had been exposed to COVID-19 and were quarantining. To protect the health and safety of employees, contractors, and other residents, this resident notified Humphrey so that pest control could be skipped for their unit. Humphrey negligently failed to notify the contractor nor Harlow of the resident's condition and request. Thus willingly allowing them to be exposed to a deadly pathogen, when the resident reluctantly opened their door and repeated their previous request.

19. On January 13, 2021 plaintiff Amanda Eckles sent a lengthy text message to Rob McCrary, Area Director for Princeton Management, complaining about Humphrey's treatment and attitude towards her. McCrary wrote back never once acknowledging or addressing Humphrey's treatment of her employees, but instead attacked Eckles by starting the reply with "First of all....the correct way to communicate with people is by the phone calls or conversations not endless text messages". McCrary finished his short reply

28

### Case Law & Analysis Supporting Plaintiff's Claims for Count 33

To state a cause of action for negligent supervision, the plaintiff must plead facts establishing that (1) the defendant had a duty to supervise the harming party, (2) the defendant negligently supervised the harming party, and (3) such negligence proximately caused the Plaintiff's injuries. *Van Horne*, 294 Ill. App 3d at 657. In *Jane Doe, et al. v. Chad Coe, et al., 2019 IL 123521 (May 23, 2019)*, the Illinois Supreme Court stated multiple quotes in its decision which are relevant to the matter at hand. These include: "Negligent hiring, negligent supervision, and negligent retention are all direct causes of action against the employer for misconduct in failing to reasonably hire, supervise, or retain the employee." "The initiation and existence of an employment relationship imposes a duty upon the employer to exercise reasonable care in employing only competent individuals. These duties are to all foreseeable individuals who might be impacted by the employee or his employment, such as a customer of a defendant business". "We do not require that the supervisor have prior notice of a particular unfitness because reasonable performance of the duty to supervise will put the supervisor on notice of an employee's conduct or perhaps prevent the employee's tortious conduct all together....only general foreseeability is required in an employment context".

### PRAYER FOR RELIEF FOR COUNT 33

Whereas the above described actions committed by Amy Humphrey, a supervisory employee of Princeton Management, represent a clear and present danger to Plaintiffs who have been forced to endure ongoing dangerous, life threatening, damaging, and outrageous

30

with "Amy is there to steer the ship and get our apartment community full......changes had to be made".

20. The following day, Plaintiff Eckles received a written warning from McCrary via telephone; written by Humphrey, and presented by Alfred Stanley. The timing of this written warning seems very suspicious, and occurred just 29 hours after Eckles had complained against Humphrey.

21. That Princeton failed to perform proper due diligence regarding Humphrey prior to her hiring, which has since caused Plaintiff's harm.

22. That Princeton failed to adequately supervise Humphrey, allowing over 90+ days between visits from Princeton Management's supervisory employees.

23. That Princeton failed to terminate Humphrey after numerous complaints were received regarding her conduct towards both employees and tenants.

24. That Princeton has failed to train any of its employees in an adequate manner.

25. That Defendant's actions have caused irreparable harm to Plaintiffs, who continued to be put in peril by Humphrey, and therefore demand to be made whole.

29

## COUNT 34

## INTENTIONAL & NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

NOW COMES PLAINTIFFS, Jason R. Harlow and Amanda Eckles who replead all counts contained herein, and respectfully prays this Honorable Court as follows:

1. That on or about December 18, 2019 Plaintiff Jason R. Harlow began employment with Defendant Princeton Management, D/B/A Lancaster Heights Owner, LLC as a maintenance technician. This employment relationship continues as of the date of this filing. Prior to his employment with Princeton Management, Harlow was employed as a United States Park Ranger by the US Department of Interior. His duty station was in Yellowstone National Park. Harlow operated the Snake River District Ambulance and assisted in patient care from minor scrapes to life threatening events such as drownings and myocardial infarctions, as an Emergency Medical Responder as part of his job responsibilities. Harlow was nominated for and received the National Park Service STAR award, and as of the date of this filing, still holds an active US Government security clearance. During his tenure, Harlow assisted with the protection details of both the Secretary of the Interior, as well as the Vice President of the United States. Additionally Harlow is a Federal Aviation Administration commercially rated pilot and flight instructor.

acts by Humphrey. The inaction of Princeton Management indicates they support, agree, and are complicit with these actions against Plaintiffs after having been duly notified of Humphrey's behavior though multiple complaints by multiple employees, despite having the responsibility to ensure employee's health and safety in the workplace. Therefore Plaintiffs Jason Harlow, and Amanda Eckles respectful pray this honorable court as follows:

1. An amount of money, to be determined by this Court, to penalize Defendants who willfully and maliciously allowed Humphrey to continue her reign of unchecked terror against Plaintiffs and to make Plaintiffs whole for being subjected to over four months of negligent actions by Princeton Management thru its employees and agents.

2. Any and all other relief as determined appropriate by this Court.-

2. That from his start date through September 16, 2020, Harlow had received stellar

performance reviews, and was not the subject to any disciplinary actions by Princeton.

3. That on or about September 16, 2020, Defendant Amy Humphrey began employment

with Princeton as the property manager of Lancaster Heights, an apartment community

located at 1462 E. College Ave, Normal Illinois, where Harlow was employed. The hiring of

Humphrey placed her as Harlow's supervising manager.

4. That from the start of her employment with Princeton, Humphrey showed a continual

disdain for Harlow, as indicated by her derogatory tone of voice, body language, dirty looks,

poor and mean spirited attitude, shortness, and above normal scrutiny of Harlow's work

performance, which appeared to be isolated mostly towards Harlow. In fact, the first time

Humphrey met Harlow, she gave him a very dirty look as they were introduced to each

other.

5. That on or about October 7, 2020, Harlow was called to Humphrey's office. Humphrey

began berating Harlow like a toddler, as Humphrey stood with her face distorted with the

rage of a wild animal, screaming, intimidating, demeaning, and verbally assaulting Harlow

for his failure to handle raw sewage without the proper PPE, stemming from an "incident"

on October 4. At several points within this outrageous action by Humphrey, Harlow began

to legitimately fear for his safety. This attack by Humphrey upon Harlow was performed

with the office door wide open, resulting in other employees, including Eckles, hearing this

33

tirade of insanity, with her commenting "I can't believe she did that to you". Additionally, Humphrey never once asked Harlow for his side of the story, but instead took the word of an individual who was walking barefoot through raw sewage, while allowing her toddler to play in said raw sewage water as human feces floated by. At the beginning of the meeting, Humphrey already had the written warning prepared and signed, indicating extreme bias as well as intentionally targeting Harlow for discipline as well as outright bullying and harassment, no matter the circumstances. Harlow, having been a park ranger, has had four close encounters with wild grizzly bears, yet he feared for his safety more during Humphrey's assault than he did in any of the aforementioned bear encounters. Lastly, it should be noted that Harlow receives the sum of $0.42 per hour to carry the after-hours pager indicating that it is not a high priority for Princeton.

6. That Harlow had previously notified Princeton in April 2020, that he was diagnosed with a serious autoimmune disorder, and as such, needed the proper PPE in order to prevent infection from hazardous conditions, including but not limited to, raw sewage. Additionally, this is not an unreasonable request from any person, and is mandated by federal and state occupational safety statutes.

7. That Harlow received a written reprimand from Humphrey, stemming from his inability to handle raw sewage, due to his disability which was known to Princeton. These combined outrageous actions by Humphrey sent Harlow into a severe anxiety / PTSD attack, resulting in two days loss of work, as having your civil rights as a disabled individual blatantly violated is a traumatic experience. Additionally, Humphrey's verbal assault

34

awakened long repressed memories of childhood abuse brought back by the manner in which Humphrey verbally assaulted Harlow. This trauma would be reawakened each time Humphrey verbally attacked Harlow.

8. That due to the unreasonable, intimidating and viciousness of Humphrey's written reprimand and verbal tirade upon Plaintiff, Harlow then filed written complaints with the United States Equal Opportunity Commission, the Illinois Department of Human Rights, and the United States Occupational Safety and Health Administration.

9. That in response to Harlow's complaints to those agencies, Humphrey took it upon herself to retaliate, and thus removed Harlow from the after-hours on-call rotation for approximately one week, resulting in a financial loss of approximately $150 to Harlow. Additionally Humphrey has refused to allow Harlow to complete work orders for tenants on the property per his job description, and instead has had Harlow painting nearly every day since. These actions by Humphrey continue to demonstrate her lack of decision making skills, a lack of empathy, and willfulness to violate the law just so Humphrey can continue her unchecked micromanaging, intimidating, and domineering power trip against Harlow and all employees entrusted into her care. Additionally on October 9, 2020, Humphrey stated to multiple employees including Eckles, to "make sure Jason (Harlow) doesn't sabotage anything".

10. That since Harlow filed complaints against Humphrey, Humphrey took it upon herself to begin making Harlow's life a living hell by creating an atmosphere of extreme hostilities,

nitpicking every detail of Harlow's work (others have not been subject to this to nearly the extent Harlow has), extreme physiological abuse, and in general trying to dictate every movement of his life including expecting him to attend an unscheduled and unannounced training session at 9:30 pm, as well as working 9 consecutive days without a day off in violation of 820 ILCS 140/1-9 "One Day Rest in Seven Act". Humphrey even went as far as to interrogate Harlow for the reasons why he wanted to take a paid day off work using his earned vacation time, when frankly, it was none of her concern.

11. That on or about November 16, 2020, Humphrey instituted a new draconian break policy amongst all employees. Her new unwritten policy stated that all breaks must be taken inside the office, and that no one could leave the office on break for any reason whatsoever. Humphrey indicted that anyone leaving the office for any reason, would be subject to discipline, up to and including termination of employment, along with a loss of housing.

12. That Humphrey, in yet another fit of spite towards Harlow, instituted this policy to attack Harlow, as Harlow was known to stop by his on-property residence while on break for minor brief instances such as grabbing a cold beverage, using the restroom, putting delivered packages inside to prevent theft, allow his dog outside to urinate / defecate, obtain medications, etc. These types of stops typically lasted less than two minutes and were very infrequent in nature.

36

13. That by threatening employees with loss of income and housing via reprimand, Humphrey was callously abusing her authority while creating an atmosphere like that of a prison. This reckless, outrageous, demeaning, and over-the-top conduct by Humphrey continued against Harlow for 30 minutes per day over the course of 8 days.

14. That by Imprisoning Jason Harlow, along with his co-workers Amanda Eckles, & Ashton Hyatt, Humphrey violated each employee's constitutionally guaranteed freedom of movement. Illinois Constitution Section 2, *"no person shall be deprived of life, **liberty** or property without due process of law nor be denied the equal protection of the laws"*

15. That Humphreys willful actions of unlawfully restraining the employees entrusted into her care, runs contrary to 720 ILCS 5/10-3 *" FALSE IMPRISONMENT: (a) A person commits the offense of False Imprisonment when he or she knowingly without legal authority detains another"*. The violation of this statute is a Class 4 felony.

16. That Humphrey is not a commissioned peace officer of the State of Illinois, nor is Humphrey an officer of the United States Government, and as such, had no legal authority to willfully detain, with malice, up to five of her employees captive against their will for any reason whatsoever.

17. That on November 25, 2020, a teleconference was held with all six employees of Lancaster Heights as well as with Mr. Rob McCrary, Area Director for Princeton. Also

37

joining the call was Ms. Deborah McGraw, secretary to Mr. McCrary. This call came six days after Harlow inquired with Princeton Human Resources about the legality of such action.

18. That during this conference call, the restriction regarding the illegal and willful detainment of the aforementioned employees was lifted, however break times were shortened to just 20 minutes per day from the previous 30. Humphrey continued to demand that Harlow check in and out with her regarding his break, as would be demanded of a child.

19. That this new policy was directed at Harlow in an effort to force his resignation. As a side effect of his immune disorder, Harlow experiences severe fatigue. By shortening the rest periods by 50 minutes per week knowing about Harlow's medical condition, Humphrey and Princeton have engaged in targeted discrimination, resulting in stress and fatigue for Harlow.

20. That on or about December 1, 2020, Harlow requested a copy of the Princeton break policy, as phone calls to other Princeton properties revealed they were still offering 30 minutes of break time daily. A second request for this written policy was made on January 5 to Humphrey via text message. As of the date of this filing, Princeton has refused to provide a copy of this policy to the Plaintiffs whom they expect to abide by any and all company rules and policies. This refusal to provide written policies indicates that if such a

38

policy exists, it is not being applied equally across all 180+ Princeton managed properties, and further indicates willful targeted bias against Jason R. Harlow.

21. That Princeton Management, D/B/A Lancaster Heights Owner, LLC, has sanctioned and is well aware of the actions of Humphrey. Yet despite multiple complaints made by at least four on-site employees along with several residents, potential evidence of criminal act(s), evidence of discrimination, evidence of bullying, evidence of abuse, & evidence of harassment, Princeton continues to negligently employ Humphrey in her position as Property Manager.

22. That this pattern of sanctioning questionable behavior that promotes an unhealthy and extremely stressful work environment seems to be the norm for Princeton, as in the past they have failed to assure that the workplace is free from harassment. These past actions by employees in a leadership role at Lancaster Heights included sexual harassment, bullying, gas lighting, a hostile work environment, battery, threats, intimidation, documented discrimination, and failure to provide a reasonable accommodation. Princeton continually refuses to provide any training to its employees which could help in stopping this type of behavior.

23. That the actions by Princeton and Humphrey are contrary to what the average person would accept as "normal and acceptable" workplace behavior and rules, and would instead describe these actions as simply outrageous. An example of this was when Alfred Stanley

39

the maintenance supervisor took a paid vacation day for personal reasons, Humphrey demanded that he come to work, to perform maintenance services.

24. That Princeton has an obligation to provide every employee a workplace free of discrimination, harassment, bullying, criminal acts, and protection from known hazards. However despite its written policy, Princeton, and Humphrey have failed in these obligations to their employees as demonstrated by the intentional malicious acts by Humphrey sanctioned by management of Princeton.

25. That Princeton knew or should have known, that holding employees against their will is contrary to established law and is contrary to a normal, healthy and acceptable work environment.

26. That on December 21, 2020, Harlow received an email from Kathy Poliquin, Human Resources Director for Princeton, which stated in part "I am in receipt of your recent allegations of harassment dated Friday December 18, 2020, regarding Property Manager, Amy Humphrey. After investigating your claims, we have determined that Amy was acting within the scope of her duties and responsibilities as Property Manager and found no evidence of wrongdoing on her part."

27. On or about December 3, 2020, Harlow and Hyatt had been slowed from going on break while talking to Humphrey for 2-3 minutes. After the discussion was over, Harlow and

35. That Humphrey and Princeton must make Plaintiffs whole due to their willful and malicious acts which have caused Plaintiffs emotional distress.

36. Defendants owed Plaintiffs a duty of care not to cause Plaintiff's emotional distress.

37. Defendants breach this duty of care by way of their own conduct as alleged herein.

38. As a proximate result of Defendant's extreme and outrageous acts, Plaintiffs have suffered emotional distress, humiliation and embarrassment, to the point of being emotionally breaking down with tears, anger, frustration and fear.

### Case Law & Analysis Supporting Plaintiff's Claims for Count 34

The Illinois Supreme Court first recognized intentional infliction of emotional distress as a cause of action in _Knieriem v. Izzo, 22 Ill. 2D 73 (1961)._ The court discussed the elements that a plaintiff must prove to recover damages for intentional infliction of emotional distress in _Public Finance Corp. v. Davis, 66 Ill 2d 85 (1976)._

A plaintiff many recover damages for intentional infliction of emotional distress if he or she can prove; (1) that the defendant's conduct was extreme and outrageous; (2) that the defendant intended to cause or recklessly or consciously disregarded the probability of

43

livelihoods, their housing, and also being viciously verbally attacked over every little minor incident due to Humphrey's ongoing horrible attitude, abusiveness, pettiness, and a desire to control every single aspect of every employee every day.

32. That Plaintiff Harlow was forced to double the dosage on three of his antidepressant and anxiety medications in order to deal with Humphrey's ongoing abuses of power. This in turn has resulted in daily bouts of diarrhea as well as severe night sweats for Harlow, affecting his sleep. Additionally Harlow has experienced shortness of breath, multiple PTSD attacks requiring time away from work, hopelessness, fright, anger, extreme depression, daily anxiety, loss of consortium with his husband, the presence of long repressed memories of abuse, along with many other symptoms of extreme stress.

33. That on January 19, 2021, Plaintiff Eckles was publicly berated and attacked by Humphrey who was incensed over a $5 bathroom rug. This caused severe emotional distress for Eckles. This tirade was overheard by Harlow and Kristen Whitesell.

34. That the above described actions by Amy Humphrey and Princeton Management have resulted in significant harm to all Plaintiff's health, both physically and mentally. The above described acts were intentionally perpetrated with the express desire to cause Harlow harm, after he reported misconduct to the government. This retaliatory, mortifying, and outrageous willful conduct by Defendants is truly the very definition of outrageous and malicious conduct.

Hyatt went upstairs for their 10 minute break. At the conclusion of exactly 10 minutes Harlow went downstairs. Humphrey then reprimanded Harlow for being 3 minutes late from coming back from break.

28. That on November 19, 2020, Humphrey made to point to tell Harlow and Hyatt that they were 1 minute late, which demonstrates the pettiness in which Humphrey conducted herself, and the double standards employed by Humphrey, as she could not even arrive to work on time for the first entire month of her employment.

29. That Harlow, Hyatt, and Eckles, frequently go an entire eight hour shift totally unsupervised, yet Humphrey seems fixated on 20 minutes' worth of time as if Plaintiffs are untrustworthy. Plaintiffs have full access to all 198 apartment keys, along with the personally identifiable information of every tenant who lives on the property. Additionally, Plaintiffs have keys to all areas of the workplace.

30. That Humphrey has never left her chair in her office even once to personally observe the work of either Harlow, Eckles or Hyatt, yet is always ready to criticize and demean these employees regarding every minute detail imaginable.

31. That the Plaintiffs have endured unimaginable working conditions under Humphrey and Princeton, and as such, have suffered severe mental anguish due to Humphrey's prison like atmosphere in their workplace. Plaintiffs live in constant fear for their safety, their

41

causing emotional distress; (3) that he or she suffered severe or extreme emotional distress; and (4) that the defendant's conduct actually and proximately caused emotional distress. *Public Finance,* 66 Ill. 2d at 89-9. See also *Doe v. Calumet City,* 161 Ill. 2d 374 (1994). The plaintiff does not, however, need to establish a contemporaneous physical impact or injury. *Honaker v. Smith,* 256 F. 3d 477 (7th Cir. 2000). Additionally, the conduct which goes "beyond all possible bounds of decency and [would be] regarded as intolerable in a civilized society" in what is needed to pursue an intentional infliction of emotional distress claim. Kolegas v. Heftel Broad. Corp., 154 Ill. 2d 1, 21 (1992).

There are four elements that a plaintiff must prove to recover damages for intentional infliction of emotional distress. First, a plaintiff must prove that the defendant's conduct was extreme and outrageous. A determination of whether words or conduct are extreme and outrageous must be made objectively, on a case-by-case basis. *Knieriem,* 22 Ill. 2d at 86. Without special knowledge or notice to the defendant, words or conduct must cause a person of ordinary sensibilities to suffer emotional distress. *Knieriem,* 22 Ill. 2d at 86. Mere insults, indignities, threats, annoyances, oppressions, trivialities, vulgarities or other meaningless and abusive expressions do not constitute extreme and outrageous conduct. *Knieriem,* 22 Ill. 2d at 86; *Public finance,* 66 Ill. 2d at 89-90. A cause of action for intentional infliction of emotional distress must be premised on conduct that is so extreme and outrageous that it goes beyond all possible bounds of decency, *Public Finance,* 66 Ill. 2d at 90. See also *Rekosh v. Parks,* 316 Ill. App 3d 58 (2000). In determining whether conduct is extreme and outrageous, the relationship between the parties must be considered, especially when one of the parties has actual or apparent power or authority over the other party. *Public Finance,* 66 Ill. 2d at 90. Other factors to be considered are whether the defendant reasonably believed that his objectives were legitimate and the defendant's

44

awareness that the plaintiff was particularly susceptible to emotional distress. _Graham v. Commonwealth Edison Co., 318 Ill. App. 3d 736 (2000)._ Second, a plaintiff must prove that the defendant intended to cause, or recklessly or consciously disregarded the probability of causing, the plaintiff to suffer emotional distress. A defendant recklessly or consciously disregards the probability of causing emotional distress if he or she is certain, or is substantially certain, that his or her conduct will cause emotional distress. _Public Finance, 66 Ill. 2d at 90._

Third, a plaintiff must prove that he or she suffered severe or extreme emotional distress. Fright, horror, grief, worry, shame, and humiliation may constitute emotional distress, but alone they do not constitute severe or extreme emotional distress. _Public Finance, 66 Ill. 2d at 90._ Emotional distress is considered severe or extreme when no reasonable person could be expected to endure it. _Public Finance, 66 Ill. 2d at 90._ The intensity and duration of the emotional distress are factors to be considered in determining its severity. _Public Finance, 66 Ill. 2d at 90._ While courts often look for physical manifestations of the emotional distress, neither physical injury nor the need for medical treatment is a necessary prerequisite to establishing severe emotional distress. _Honaker, 256 F. 3d 477._ While severe emotional distress must be proved, in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence of that distress. Illinois courts have tended to merge the issue of the outrageousness of the defendant's conduct with the issue of the severity of the plaintiff's emotional distress. In effect, the courts require more evidence of outrageousness if the evidence of distress is weaker. Finally, a plaintiff must prove that the defendant's conduct actually and proximately caused emotional distress.

## PRAYER FOR RELIEF FOR COUNT 34

Whereas Plaintiffs have suffered intentional irreparable harm, mental anguish, loss of earnings, unsafe working conditions, humiliation, anger, severe stress, and loss of freedom, Plaintiffs hereby pray this Honorable Court as follows:

1. For a temporary restraining order, a preliminary and a permanent injunction, which enjoins permanently and restrains during the pendency of this action, Amy Humphrey and any other persons acting in concert with them from intentionally or negligently inflicting further emotional distress on Plaintiffs.

2. A judgment FOR Plaintiffs and AGAINST Defendants, for damages for the intentional infliction of emotional distress, the sum of $250,000 per Plaintiff, for a total of $750,000, or an amount to be determined by this Court of Law, which shall be an amount to punish both Amy Humphrey personally & individually, as well as Princeton Management.

3. Any and all other relief as determined appropriate by this Honorable Court.

4. For loss of wages to Jason Harlow in the amount of $534, plus maximum interest allowed by statute.

## JURY DEMAND

Plaintiffs in the above entitled cause hereby demand trial by a jury of six (6) of their peers.


UNDER PENALTY OF PERJURY, I HEREBY CERTIFY THAT TO THE BEST OF MY KNOWLEDGE, THAT THE FACTS AND ALLEGATIONS IN THIS CASE ARE COMPLETE AND TRUTHFUL AND THAT THIS COMPLAINT IS FILED IN GOOD FAITH.


Date: March 15, 2021


Signed: /s/ *Jason R. Harlow*

Jason R. Harlow, Plaintiff Pro-Se

1436 E. College Ave. #1

Normal, IL 61761

417-848-5095


Signed: /s/ *Amanda J. Eckles*

Amanda J. Eckles, Plaintiff Pro-Se

1466 E. College Ave #1

Normal, IL 61761

309-212-9107

48

5. Any and all applicable costs of suit including attorney's fees, if applicable.

6. For any and all current or future medical expenses incurred by Plaintiffs, for any and all mental health treatments, counseling, service animals (including food, training and veterinary care), medications, doctor's visits, & travel expenses for any and all medical care required as a result of the willful actions of Amy Humphrey.

7. Referral of this matter to the appropriate authorities, both federal and state, to begin a criminal investigation into the conduct of Princeton and Humphrey.